IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Noreen Coffin and Darvin Coffin, :
               Appellants :
                :
      v. : No. 1516 C.D. 2023
                : Submitted: March 4, 2025
Carbon County Animal Shelter and :
Zachary Thomas :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT          FILED:  July 22, 2025

Noreen Coffin and Darvin Coffin have appealed an order of the Carbon County Court of Common Pleas (trial court) denying their motion for a new trial. They contend that the trial court erred in sending the question of Noreen Coffin's negligence to the jury because the Carbon County Animal Shelter (Carbon County) and Zachary Thomas (Thomas) (collectively, Defendants) did not prove that her attack by a dog was a foreseeable risk. We agree and hold that the trial court erred in sending this question to the jury and, thus, remand the matter for further proceedings.

**Background**

On June 11, 2020, the Coffins filed a complaint in negligence against Defendants seeking damages for Noreen Coffin's serious leg injuries sustained in an attack by a dog under the care of Carbon County. They also sought damages for Darvin Coffin's loss of consortium.

The evidence presented at the trial showed the following. On September 17, 2019, Noreen Coffin arrived at the animal shelter at 11:45 a.m. As she changed her shoes in her car, Thomas approached, walking a dog on a leash up the path toward her. When the dog jumped, she knocked it down with her hand and told Thomas to take the dog away. While she was walking to the animal shelter from her car, the dog attacked her from behind, biting her leg and causing her to fall to the ground. An ambulance was called to transport her to the hospital. She broke both of her ankles in the fall and was required to undergo surgery on her right ankle. The bite has resulted in permanent disfiguration, nerve damage, and scarring to her left leg.

At the conclusion of the trial, the trial court instructed the jury on the elements of a negligence claim as follows:

> I will now explain what negligence is. A person or government entity must act in a reasonably careful manner to avoid harming others. The care required varies according to the circumstances and the degree of danger at a particular time. *You must decide how a reasonably careful person or government entity would act under the circumstances established by the evidence in this case.* A person or government entity who does something a reasonably careful person would not do under the circumstances is negligent. A person or government entity also can be negligent by failing to act. A person or government entity who fails to do something a reasonably careful person would do under the circumstances is negligent. In order for the [Coffins] to recover in this case, Zachary Thomas' or Carbon County's negligent conduct must have been a factual cause in bringing about harm.
>
> . . . .
>
> *As a defense, Carbon County claims that Noreen Coffin's own negligence was a factual cause of her injury. Carbon County has the burden to prove both of the following: One, that Noreen Coffin was negligent and, two, that Noreen Coffin's negligence was a factual cause of her injury. If you find Noreen Coffin's*

2

*percentage of negligence is greater than 50 percent, Noreen Coffin cannot recover damages.*

Trial Transcript, 1/19/2023, at 51-53; Reproduced Record at 463-65 (R.R. __)[1] (emphasis added). The jury verdict form included the following questions relevant to comparative negligence:

Question 3:

Do you find the Plaintiff, Noreen Coffin, was negligent?

Yes __[]__          No _____

If you answered Question 3 "Yes," please move on to Question 4. If you answered Question 2 "No," please move on to Question 6.

Question 4:

Do you find the Plaintiff, Noreen Coffin's, negligence caused her injuries?

Yes __[]__          No _____

If you answered Question 4 "Yes," please move on to Question 5. If you answered Question 4 "No," please move on to Question 6.

R.R. 544.

On January 19, 2023, a jury entered a verdict in favor of Noreen Coffin and awarded damages in the amount of $40,000. The jury also determined that Noreen Coffin's comparative negligence was 50%, which reduced the award of damages to $20,000. R.R. 544-45. The jury rejected Darvin Coffin's claim for loss of consortium. *Id*. at 545.

---

[1] Pennsylvania Rule of Appellate Procedure 2173 requires that the reproduced record be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it only utilizes Arabic figures. For convenience, we cite to each page as paginated by the Coffins.

On January 27, 2023, the Coffins filed a post-trial motion. They argued that Defendants did not prove that Noreen Coffin acted with negligence, and, therefore, the jury should not have been charged on comparative negligence. The Coffins sought post-trial relief in the form of a new trial, which the trial court denied.

On December 21, 2023, the Coffins appealed to this Court. On January 19, 2024, the trial court entered an order directing the Coffins to file a concise statement of errors complained of on appeal within 21 days under Pa.R.A.P. 1925(b). The Coffins filed their concise statement on February 12, 2024, three days past the due date.

On March 13, 2024, the trial court issued a Pa.R.A.P. 1925(a) opinion. The trial court opined that the Coffins' filing of the Pa.R.A.P. 1925(b) statement was untimely, which resulted in a waiver of all issues raised on appeal. Nevertheless, the trial court addressed the issues raised by the Coffins in their 1925(b) statement. The trial court rejected the Coffins' argument that the evidence did not warrant the jury instruction on Noreen Coffin's comparative negligence. The trial court explained that Thomas' credited testimony established that Noreen Coffin walked in close proximity to him and the dog, despite knowing that the dog was a threat. Noreen Coffin testified that when the dog jumped at her in their initial encounter, she told Thomas that the dog seemed anxious, and he should get it away from her. The trial court noted that the dog's attack would not have happened had Noreen Coffin waited for Thomas to take the dog inside. Instead, she chose to walk to the animal shelter while talking with Thomas. The trial court also noted that Noreen Coffin had volunteered for years at the shelter and, in fact, had trained Thomas, who had been working at the shelter only for two months before the attack. The trial court opined that Defendants needed only "to produce some evidence of negligence

4

in the part of [Noreen] Coffin in order to require the instruction on comparative negligence and such evidence has clearly been established in this case." Trial Court Pa.R.A.P. 1925(a) Op. at 10. Even so, the trial court explained that a new trial was unnecessary. If it was error to instruct the jury on Noreen Coffin's alleged negligence, the remedy was to eliminate the reduction in damages. This would result in a $40,000 award of damages to Noreen Coffin.

On April 8, 2024, the Coffins filed an unopposed motion with the trial court to extend the time to file their Pa.R.A.P. 1925(b) statement *nunc pro tunc*. The motion alleged that the Coffins mailed the 1925(b) statement to the prothonotary's office three days before the deadline but without a certificate of mailing, which they described as a "clerical oversight." R.R. 517. The motion alleged that the United States Postal Service went beyond its "consistent maximum of three days between the date of sending the letter and the filing date with the court." *Id*. at 518. The motion asserted that "this extremely rare circumstance of an extended mailing timeline along with the clerical error of not providing a Certificate of Mailing form" warranted *nunc pro tunc* relief. *Id*.

On July 12, 2024, the trial court granted the Coffins' motion and "retroactively granted a ten (10) day extension which render[ed] their Pa.R.[A].P. 1925(b) Statement filed on February 12, 2024, timely."[2] Trial Court Order, 7/12/2024, at 1; R.R. 521.

---

[2] The Pennsylvania Rules of Appellate Procedure state, in pertinent part, that "[i]n extraordinary circumstances, the judge [entering the order giving rise to the notice of appeal] may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*." Pa.R.A.P. 1925(b)(2)(i). Defendants do not challenge the trial court's grant of *nunc pro tunc* relief.

**Appeal**

On appeal,[3] the Coffins raise one issue for our review:

Whether the [trial c]ourt abused its discretion and committed an error of law by instructing the jury on [Noreen Coffin's] comparative negligence and including it on the verdict slip, given the Defendant[s'] failure to establish Noreen Coffin's comparative negligence and the lack of any evidence of Noreen Coffin's [c]omparative [n]egligence during the trial, leading to a lack of clarity, confusion, and the potential for the jury to be misled, thereby constituting fundamental error in the proceedings.

Coffins Brief at 5.

The Coffins argue that Noreen Coffin's experience as a volunteer at Carbon County was irrelevant to the question of whether she acted in a negligent manner. She argues that she simply walked from her car to the shelter to start her shift. It was Thomas who had the responsibility to maintain control over the dog, which was on a leash. Noreen Coffin did not provoke the attack. After the dog initially jumped at her, she moved away and told Thomas to take the dog away. However, he allowed the dog to get close enough to attack her. The Coffins argue that "this sequence of events underscores that Thomas, not Noreen, was responsible for the situation." Coffins Brief at 14. It was Thomas' failure to manage the dog, as she requested, that caused her injury. Simply, Defendants did not meet their burden of proving that she was negligent.

In response, Defendants argue that it was in Noreen Coffin's power to distance herself from the dog. Noreen stated that she told Thomas to take the dog

---

[3] When reviewing a trial court's denial of post-trial motions, our Court's review determines "whether the trial court abused its discretion or committed an error of law." *Linder v. City of Chester*, 78 A.3d 694, 696 n.2 (Pa. Cmwlth. 2013) (quoting *Commonwealth ex rel. Corbett v. Manson*, 903 A.2d 69, 73 n.4 (Pa. Cmwlth. 2006)).

away, but he gave a different version.  When the dog jumped up at Noreen during their initial encounter, Thomas asked whether the dog tried to bite her, and Noreen assured him that the dog did not hurt her.  Thomas testified that he and Noreen walked back to the shelter while talking.  As they walked, they drifted closer to each other, which allowed the dog to bite Noreen.  The incident would not have occurred had Noreen simply waited for Thomas to take the dog inside, which was conduct expected under the reasonable person standard.

## Analysis

Section 7102(a) of the Judicial Code, known as Pennsylvania's Comparative Negligence Law, ameliorates "the harshness of the common law doctrine of contributory negligence, which served as an absolute bar to recovery by plaintiffs who may have been only minimally responsible for their loss[.]" *Boyle v. Independent Lift Truck, Inc.*, 6 A.3d 492, 493 n.1 (Pa. 2010).  Section 7102(a) states:

> **(a) General rule.**--In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, *but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.*

42 Pa. C.S. §7102 (emphasis added).  "[T]he doctrine of comparative negligence is employed to apportion the costs of an accident grounded upon the relative fault of both the plaintiff and the defendant." *Boyle*, 6 A.3d at 493 n.1.  The Comparative Negligence Law permits "a plaintiff to recover damages where the plaintiff's contributory negligence is equal to or less than the defendant's negligence." *Id.*; 42 Pa. C.S. §7102.

7

"[T]he burden of establishing comparative negligence rests on the defendant." *Rose v. Annabi*, 934 A.2d 743, 746 (Pa. Super. 2007). In demonstrating that the plaintiff was negligent, the defendant has the burden of showing that the plaintiff's conduct was unreasonable under the circumstances. *Id*. at 746-47. The standard of negligence employed to evaluate a plaintiff's conduct is the same as the standard of negligence employed to evaluate a defendant's conduct. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT LIABILITY §3 (Am. Law Inst. 2000). The elements for a negligence claim are: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Toro v. Fitness International LLC*, 150 A.3d 968, 976-77 (Pa. Super. 2016).

Foreseeability of the risk of harm is an important element of duty. As our Superior Court explained in *Blake v. Fried*, 95 A.2d 360, 364 (Pa. Super. 1953),[4] quoting Chief Justice Cardozo in *Palsgraf v. Long Island Railroad Company*, 162 N.E. 99, 101 (N.Y. 1928), "[w]ant of ordinary care consists in failure to anticipate what is reasonably probable, not what is remotely possible." *See also Department of Highways v. Eldridge*, 184 A.2d 488, 491-92 (Pa. 1962) (*Eldridge*) ("[A]n act cannot be negligent unless the harm is foreseeable to the class to which the complaining party belongs[.]").

Finally, "a court should only charge the jury 'on the law applicable to the factual parameters of a particular case[.]'" *Boyle*, 6 A.3d at 495 (quoting *Cruz v. Northeastern Hospital*, 801 A.2d 602, 611 (Pa. Super. 2002)). "More specifically,

---

[4] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

when there is no evidence of [the] plaintiff's negligence, no instruction to the jury on contributory negligence should be given." *Boyle*, 6 A.3d at 495.

Here, the issue is whether there was enough evidence of negligence by Noreen Coffin to submit the question of her comparative negligence to the jury. Stated otherwise, the question is whether a reasonable person in Noreen Coffin's position would foresee that the dog had vicious tendencies and, thus, exercise care to avoid the risk of an attack.

In *Blake*, 95 A.2d 360, spectators at a stock car race filed a negligence action against the racetrack operators for injuries sustained when a wheel came off a stock car and fell into the grandstand where the plaintiffs were sitting. Because the plaintiffs presented no evidence that "a wheel becoming dislodged from a racing car in its rapid course around the track would foreseeably clear a fence 14 feet in height, hurtle through the air and injure spectators in the fourth and fifth row of the stadium[,]" the defendants had no duty of care to protect spectators against such a risk. *Id*. at 364. Likewise, in *Zilka v. Sanctis Construction, Inc.*, 186 A.2d 897 (Pa. 1962), the risk was found too remote. There, the blade of a bulldozer under operation hit a fallen tree, part of which struck the plaintiff standing 30 to 35 feet from the bulldozer. The Supreme Court held that evidence did not establish that the risk was foreseeable.

Pennsylvania appellate jurisprudence has examined liability for dog bites. Recently, in *Goodenow v. McMahan* (Pa. Super., No. 625 WDA 2022, filed April 19, 2023) (unpublished memorandum),[5] the Superior Court considered the foreseeability of risk in the context of a dog bite. There, a dog owned by Ronald

---

[5] Non-published decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. Pa.R.A.P. 126(b).

9

McMahan, the owner of a sportsmen's club, bit the dog owned by Don Goodenow, who was participating in a trapshooting event at the club. Goodenow sought to hold the club liable, but the common pleas court granted summary judgment to the club for the stated reason that the evidence did not show the club had notice of the dog's alleged vicious propensities. Accordingly, it had no duty to protect against that risk.

The Superior Court affirmed the common pleas court's judgment. It explained that "dangerous propensity includes 'a propensity or tendency of an animal to do any act that might endanger the safety of the person and property of others in a given situation.'" *McMahan*, slip op. at 9-10 (quoting *Groner v. Hedrick*, 169 A.2d 302, 303 (Pa. 1961)). The Goodenows did not produce evidence that McMahan's dog had dangerous propensities. Specifically, there was "no evidence of any barking, scratching, growling or biting. [The dog] did not jump up onto any humans or other dogs." *McMahan*, slip op. at 11 (quoting Common Pleas Court Order, 5/6/2022, at 3-5). Although McMahan's dog intentionally bumped the screen door of the Goodenows' camper before the biting incident, "there was no testimony that [the dog] growled, clawed at the screen door or hit it with enough force or aggression to cause any damage." *McMahan*, slip op. at 11. There was no evidence that McMahan's dog had previously attacked another dog or that McMahan knew that his dog had attacked other dogs. Simply, the risk that the dog would bite another person or animal was not foreseeable.

In *Deardorff v. Burger*, 606 A.2d 489 (Pa. Super. 1992), a mother sued a dog owner for injuries her child sustained from the dog's bites. The owner had been informed that his dog had previously bitten a person, who had kicked the dog on three occasions. During each episode, the dog "back[ed] down." *Id*. at 493.

10

Knowledge of this single prior bite was insufficient to put the owner on notice that the dog had "unmistakable vicious tendencies." *Id*. at 494.

Under Pennsylvania's Comparative Negligence Law, the standard of negligence employed to evaluate a plaintiff's conduct is that employed to evaluate a defendant's conduct. Noreen Coffin argues that her actions "were entirely reasonable and consistent with what anyone in her position would do[,]" *i.e.*, walk to the building in order to report for her shift. Coffins Brief at 13. The dog had arrived at the shelter five days before the incident, and Noreen Coffin had no experience with it. She did not provoke the dog in any way. Defendants respond that the dog jumped at her and, further, her statement to Thomas that he should take the dog away suggested that Noreen Coffin understood the dog to present a risk.

Noreen Coffin may have understood the risk, such as it was, to be another jump, not a vicious attack. However, for a duty to arise, the dog's "unmistakable vicious tendencies" had to be known. *Deardoff*, 606 A.2d at 494. "Want of ordinary care consists in failure to anticipate what is reasonably probable, not what is remotely possible." *Blake*, 95 A.2d at 364 (quoting *Palsgraf*, 162 N.E. at 101).

Here, Noreen Coffin's brief encounter with the dog did not reveal the animal's vicious tendencies. The evidence did not show that the jump was accompanied by a growl, snap, or an attempt to hurt her. We hold that the trial court erred in giving the jury instruction on negligence by Noreen Coffin. "[W]hen there is no evidence of [the] plaintiff's negligence," no instruction to the jury on contributory or comparative negligence should be given. *Boyle*, 6 A.3d at 495.

We consider, next, whether the trial court's error warrants a new trial. The Coffins filed a motion for post-trial relief under Pennsylvania Rule of Civil

Procedure 227.1, in which they asserted that the trial court erred in instructing the jury on the issue of comparative negligence and requested a new trial. The trial court denied the motion.

Under Pennsylvania Rule of Civil Procedure 227.1(d), "[a] motion for post-trial relief shall specify the relief requested and may request relief in the alternative. Separate reasons shall be set forth for each type of relief sought." Pa.R.Civ.P. 227.1(d). Rule 227.1(a) further provides:

> After trial and upon the written Motion for Post-Trial Relief filed by any party, *the court may*
>
> (1) *order a new trial as to all or any of the issues; or*
>
> (2) direct the entry of judgment in favor of any party; or
>
> (3) remove a nonsuit; or
>
> (4) *affirm, modify or change the decision; or*
>
> (5) *enter any other appropriate order*.

Pa.R.Civ.P. 227.1(a) (emphasis added). In considering a motion for post-trial relief, the court has "the inherent authority to enter any appropriate order." *Hiscott and Robinson v. King*, 626 A.2d 1235, 1238 (Pa. Super. 1993). "[A]bsent a clear abuse of discretion or an error of law which controlled the outcome of the case, we will not disturb a trial court's decision in this regard." *Id*.

In its Pa.R.A.P. 1925(a) opinion, the trial court stated that should this Court determine that it erred in giving the jury the comparative negligence instruction, the remedy is the elimination of the 50% reduction in damages and award of $40,000 in damages. In support, the trial court cited *Krivijanski v. Union Railroad Company*, 515 A.2d 933 (Pa. Super. 1986). That case concerned a wrongful death action filed when motorcyclists were killed on a private road owned by the railroad. The jury found the railroad had committed willful misconduct, and

12

it also found the decedents to have been negligent. The jury attributed 60% of the accident to the railroad's conduct and 40% to the negligence of each decedent. The plaintiffs appealed, arguing, *inter alia*, that the trial court erred in submitting the issue of the decedents' negligence to the jury.

The Superior Court agreed. It held that comparative negligence is not applicable to a case where willful misconduct is alleged. It also held that a new trial was not necessary because

> [t]he finding of the jury that the railroad's conduct constituted willful or wanton misconduct was sufficient to impose liability whether or not comparative negligence is involved and need not be disturbed. . . . [T]he amount of damages awarded was determined independently of the comparative negligence issue and need only be modified to eliminate the reduction made to reflect comparative negligence.

*Krivijanski*, 515 A.2d at 938-39.

In a similar case, *Hiscott and Robinson*, 626 A.2d 1235, attorneys filed a breach of contract claim to recover fees for services rendered prior to their discharge by the client. The trial court directed a verdict in favor of the client under the contingency fee agreement. After post-trial motions, the trial court awarded the attorneys damages under *quantum meruit*. On appeal, the attorneys argued that the trial court erred by not granting a new trial to determine the amount of compensation to which they were entitled. The Superior Court rejected the argument, reasoning that under *quantum meruit*, the attorneys were entitled to collect for the hours spent on the case, which were admitted into evidence. As such, "[t]here was no need [] to use the jury simply for purposes of calculating the mathematically correct figure." *Id*. at 1238.

13

By contrast, in *Eldridge*, 184 A.2d 488, the highway department instituted an action against the operator and owner of a tractor trailer for the damage caused by the trailer to a bridge. At trial, the defendants offered evidence that the truck's sudden impact on a bump in the roadway caused the spring hanger of the trailer to break. The trial court instructed the jury that if the highway department was found negligent in its maintenance of the roadway, this required a verdict in favor of the defendants.[6] The jury found the highway department negligent and returned the verdict for the defendants. On appeal, the Supreme Court held that the defendants' evidence was pertinent for the jury's consideration of the defendants' alleged negligence, but it was not sufficient to show that the highway department had been negligent. A holding that the highway department was negligent for allowing a bump in the roadway would impose "an unreasonable and impractical burden." *Eldridge*, 184 A.2d at 491. The Supreme Court reversed the trial court and ordered a new trial limited to the question of the negligence of the owner/operator of the trailer.

Here, as in *Krivijanski*, the amount of the total damages awarded, *i.e.*, $40,000, was determined independently of the comparative negligence issue. A new trial is not necessary "for purposes of calculating the mathematically correct figure." *Hiscott and Robinson*, 626 A.2d at 1238.

## Conclusion

For the foregoing reasons, we conclude that the trial court erred in giving the jury instruction on negligence by Noreen Coffin. Defendants did not present evidence that Noreen Coffin should have foreseen the risk. A single jump

---

[6] *Eldridge* was decided in 1962, before the passage of Pennsylvania's Comparative Negligence Law, at the time when the common law doctrine of contributory negligence governed.

14

by the dog, without a growl or snap, did not constitute "unmistakable" evidence of the dog's vicious tendencies. *Deardoff*, 606 A.2d at 493. A reasonable person would not expect that a dog on a leash presents a risk of an attack. We reverse the trial court's November 29, 2023, order denying the Coffins' motion for post-trial relief and remand the matter to the trial court to enter an order under Pa.R.Civ.P. 227.1(a) to award a total of $40,000 in damages to Noreen Coffin.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Noreen Coffin and Darvin Coffin, :
              Appellants :
 :
      v. : No. 1516 C.D. 2023
 :
Carbon County Animal Shelter and :
Zachary Thomas :

**O R D E R**

AND NOW, this 22nd day of July, 2025, the order of the Court of Common Pleas of Carbon County, dated November 29, 2023, in the above-captioned matter, is REVERSED and the matter is REMANDED to the Court of Common Pleas of Carbon County to enter an order awarding a total of $40,000 in damages to Noreen Coffin.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita